**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| KABIRU IPAYE, ) | No. ED CV 14-1715-PLA |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING ) COMMISSIONER OF SOCIAL ) SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 3, 2014, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 15, 2014, and April 16, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 7, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

**II.**

## BACKGROUND

Plaintiff was born on June 14, 1962. [Administrative Record ("AR") at 21, 165, 169.] He has past relevant work experience as a security guard and a furniture sales person. [AR at 20, 53.]

On September 27, 2010, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since January 1, 2010. [AR at 13, 165-74.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 13, 96-98.] A hearing was held on February 12, 2013, at which time plaintiff appeared by video conferencing, represented by an attorney, and testified on his own behalf. [AR at 27-58.] A vocational expert ("VE") also testified. [AR at 52-56.] On February 28, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from January 1, 2010, the alleged onset date, through February 28, 2013, the date of the decision. [AR at 13-22.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 6.] When the Appeals Council denied plaintiff's request for review on June 20, 2014 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)

(same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.[1] [AR at 15.] At step two, the ALJ concluded that plaintiff has the severe impairment of degenerative disc disease. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 16.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a limited range of light work as

---

[1]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. [AR at 15.]

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ (continued...)

4

defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[3] as follows:

> [C]an lift and carry 20 pounds occasionally and 10 pounds frequent[ly]. He can stand and walk for 6 hours out of an 8-hour workday, and he can sit for 6 hours out of an 8-hour workday. He can occasionally climb ramps and stairs.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is capable of performing his past relevant work as a security guard. [AR at 20, 54.] The ALJ made an alternative finding at step five that there are other jobs existing in the national economy that plaintiff is also able to perform, including work as a "cashier" (Dictionary of Occupational Titles ("DOT") No. 211.462-010) and "office helper" (DOT No. 239.567-010). [AR at 21-22, 55.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 1, 2010, through February 28, 2013, the date of the decision. [AR at 22.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) rejected plaintiff's subjective symptom testimony; (2) discounted the opinion of plaintiff's treating source, Hacop Oganyan, M.D.; and (3) determined plaintiff's RFC. [Joint Stipulation ("JS") at 3.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

---

[2](...continued) assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

A. CREDIBILITY

Plaintiff contends the ALJ's credibility determination was not supported by substantial evidence. [JS at 3-6.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 17-20], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 725 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. at 1138 (quoting Lester, 81 F.3d at 834) (internal quotation marks omitted). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (citation and internal quotation marks omitted). A "reviewing

1 court should not be forced to speculate as to the grounds for an adjudicator's rejection of a
2 claimant's allegations of disabling pain." Id. at 346. As such, an "implicit" finding that a plaintiff's
3 testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per
4 curiam).

As summarized by the ALJ, plaintiff testified as follows:

> [H]e is 6'1" and weighs 191 pounds. He lives with his brother and his brother's wife. His source of income is $200.00 in general relief each month. He has a valid driver's license but does not drive; his brother or sister-in-law take him places. He last worked as a security guard. He stopped working after he began having heart problems. He cannot work due to lower back pain and arthritis. His legs are numb, and he cannot do anything. He is on the waiting list at USC Medical Center. He has no health insurance. General Relief pays for some of the insurance, but there are limits to what it will pay. His medications include Neurontin, Ibuprofen, Azotex, Potassium, Quinidine, Flexeril, Lopressor, ZiphroMax, and Prozac. He takes Buspar because he is always up and down. Neurontin helps, but when it wears off, the pain returns. He sleeps on the floor because he cannot sleep in a bed. On a daily basis, he brushes his teeth and eats breakfast. His sister-in-law makes breakfast. Most of the day, he lies on the floor for a couple of hours at a time. He then rises and walks around, which helps a little. The water pill medication makes him urinate 10 to 15 times a day. He can sit for one hour and then he needs to change positions. He can lift a gallon of milk, but sometimes, his hands begin shaking. He cannot perform even a simple job due to pain. He lies down on the floor for two to three hours, four times a day. The pain radiates down his legs. He has difficulty reading, but he can see with glasses.

[AR at 17.]

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's subjective symptom testimony was "not entirely credible" for the following reasons:

> Apart from objective findings, there are substantial reasons pursuant to Social Security Ruling 96-7p to conclude that [plaintiff] remains able to engage in a wide range of work-related activities. [Plaintiff] testified that he stopped working when he began having heart problems, but in March 2010, [plaintiff] reported that he was laid off because an account was cancelled, and he earned unemployment benefits, which means that [plaintiff] certified he was ready and able to work. There is no evidence [plaintiff] has a cardiac condition. When [plaintiff] filed his disability applications, the claims representative who assisted him reported that [plaintiff] seemed fine, and he displayed no difficulty in sitting, standing, or walking. [Plaintiff] testified that he spends most of his day, lying down due to the pain. However, the examinations findings do not support his assertions. During the psychiatric consultative examination, [plaintiff] reported that he does errands; he cooks; he cleans; he shops; and he performs household chores. He dresses and bathes himself; he uses a bus for transportation, or he obtains a ride from his brother. He has no problems interacting with family and friends; he manages his own money; he generally spends his days going for a walk, performing personal grooming, cooking, eating, and watching television. All of the aforementioned factors are

inconsistent with the presence of an incapacitating or debilitating medical condition. [AR at 17, 20 (citations omitted).]

### 1.    Inconsistent Statements Regarding Reason for Leaving Work and Cardiac Condition

The ALJ discounted plaintiff's credibility by questioning the consistency of his statements regarding his reasons for stopping work. [AR at 20.] Plaintiff stopped working on December 1, 2005, and alleges he became disabled on January 1, 2010. [AR at 33, 201.] At the administrative hearing, plaintiff testified that after his employer's contract expired at the location at which plaintiff was working, he was posted to a "different location to go and work," and stopped working when his employer subsequently lost its contract with that location. [AR at 35.] He testified that he told his employer that he "was feeling a lot of problem [sic] with [his] heart," and the employer told him they would call him when they got another contract, but that there was "a limit to where they c[ould] transfer [him] anyway." [AR at 35-36.] On a claim for disability insurance benefits through the Employment Development Department of California, plaintiff wrote that he was "la[id] off" because an account was cancelled. [AR at 438.]

To the extent the ALJ found that plaintiff testified that he stopped working because of heart problems, and that this statement was inconsistent with plaintiff's statement that he was laid off [AR at 20], the ALJ misconstrued plaintiff's testimony. Plaintiff testified that he told his employer he was having heart problems, but he did not testify that he stopped working or that he was transferred to a different location *because* of heart problems. [See AR at 35-36.]

Relying on this same erroneous finding, the ALJ also discounted plaintiff's credibility because there is "no evidence [plaintiff] has a cardiac condition" [AR at 20], a statement that appears to conflict with the ALJ's earlier statement that "the records do not document evidence of *significant* cardiac disease." [AR at 17 (emphasis added).] The ALJ noted that although the record indicates that plaintiff had a history of hypertension, had been treated for heart palpitations and chest pain, and had trace edema in his ankles, regular examinations revealed a regular heart rhythm with no murmurs, gallops or rubs. [AR at 17 (citing AR at 256, 258-65, 277-79, 355, 421,

451, 453-60).] Plaintiff's hypertension was regularly described as benign. [See, e.g., AR at 372, 410, 412, 414, 418, 421-22, 428.] In February 2011, plaintiff was seen in the emergency room for high blood pressure and an abnormal EKG, but his anxiety was attributed to hearing bad news about his mother [AR at 317-19], and his blood pressure was controlled and "at goal" at his doctor's visit two weeks later. [AR at 371-73.] In November 2011, plaintiff reported to his doctor that he went to the emergency room for his high blood pressure. [AR at 397.] By his December 2011 appointment, his hypertension was noted to be controlled. [AR at 402.] In June 2012, his blood pressure was 128/78. [AR at 421.] In February 2013, his blood pressure was 130/80, lower than his goal of 140/90. [AR at 492.]

Thus, contrary to the ALJ's finding that there is "no evidence" of a cardiac condition, there is some evidence in the record that plaintiff has experienced cardiac problems in the form of palpitations and chest pains. However, because this finding is dependent on the ALJ's erroneous finding regarding plaintiff's testimony as to why he stopped working, the ALJ's reliance on the alleged inconsistent statements regarding the reasons plaintiff stopped working, and on the lack of evidence of plaintiff's cardiac condition, were not clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's credibility.

**2. Receipt of Unemployment Benefits**

The ALJ discounted plaintiff's credibility because he "earned unemployment benefits, which means that [plaintiff] certified he was ready and able to work" after he stopped working.[4] [AR at 20 (citing AR at 438).] On his work history report, plaintiff wrote that he received unemployment benefits "off and on" until July 2010. [AR at 213.] Similarly, on his function report, plaintiff wrote that his "unemployment benefit was terminated in July 2010." [AR at 226.] The Court acknowledges, as the Commissioner argues, that a claimant's receipt of unemployment benefits could be a legally sufficient reason to find a claimant not credible if the claimant considered himself

---

[4] A requirement for unemployment compensation is that the individual be "able to work and available for work that week." Cal. Unemp. Ins. Code § 1253(c).

9

capable of work and held himself out as available for work. [JS at 8 (citing Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988))]; but see Webb v. Barnhart, 433 F.3d 683, 687-88 (9th Cir. 2005) (rejecting as a basis for finding a claimant not credible the claimant's having held himself out as being able to work during the period of alleged disability).  However, as plaintiff argues, a claimant's receipt of unemployment benefits does not necessarily constitute a legally sufficient reason for an adverse credibility determination when the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work." [JS at 6 (quoting Carmickle, 533 F.3d at 1161-62).] The Ninth Circuit recently stated that "*continued* receipt" of unemployment benefits casts doubt on a claim of disability, but the receipt of some unemployment benefits, followed by the subsequent refusal of unemployment benefits, actually supports a claim of disability. Ghanim, 763 F.3d at 1165 (emphasis added).

Here, although the record contains evidence that plaintiff received unemployment benefits after the alleged onset date, the record does not establish whether plaintiff claimed he was available for full-time or part-time work.[5] In addition, although plaintiff wrote that his unemployment benefits were terminated in July 2010, the record does not show whether plaintiff ever declined unemployment benefits. Accordingly, the Court finds that the evidence in the record that plaintiff was on unemployment did not give rise to a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See, e.g., Lind v. Colvin, 2015 WL 1863313, at *4 (C.D. Cal. Apr. 23, 2015); Plummer v. Colvin, 2014 WL 7150682, at *16 (D. Az. Dec. 16, 2014) (claimant's receipt of unemployment benefits was not clear and convincing reason for ALJ's adverse credibility determination where the record did not contain the unemployment benefits application or establish the manner in which claimant held herself out as available for work in completing any such application); Wood v. Colvin, 2014 WL 4407719, at *9 (E.D. Wash. Sept. 8, 2014) (same, where record contained no certification by claimant that he was physically and mentally able to work full-time); Miller v. Colvin, 2014 WL 1873276, at *4 (C.D. Cal. May 9,

---

[5] In California, an individual can receive unemployment benefits if he is available for part-time work. Cal. Unemp. Ins. Code § 1253.8.

2014) (same, where there was no indication whether claimant based her claim for unemployment benefits on full-time or part-time work); Ellis v. Astrue, 2011 WL 5025839, at *5-6 (D. Or. Oct. 20, 2011) (same, where record did not contain claimant's unemployment benefits application).

Accordingly, plaintiff's receipt of unemployment benefits was not a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's credibility.

### 3. Observations of Claims Representative

The ALJ discounted plaintiff's credibility based on a field office disability report by a claims representative who reported that plaintiff "seemed fine," and displayed no difficulty in sitting, standing, or walking. [AR at 20 (citing AR at 198)]; Soc. Sec. Ruling ("SSR")[6] 96-7p ("[t]he adjudicator must also consider any observations about the individual recorded by Social Security Administration employees during interviews, whether in person or by telephone"); see also Wyerman v. Astrue, 2012 WL 5306236, at *2 (C.D. Cal. Oct. 26, 2012) (discrediting claimant with observations from agency employee) (citation omitted). The interview was conducted face-to-face with plaintiff. [AR at 198.] The interviewer wrote "No" in the section asking whether plaintiff had difficulty with sitting, standing or walking, among other tasks. [Id.] In a section marked "Other," the interviewer wrote, "seemed fine." [Id.] Here, plaintiff testified that he has "serious back pain" and "serious arthritis" that has "crippled" him. [AR at 36.] He testified that he can sit for about an hour, and walk for about a quarter of a mile. [AR at 47-48.] He usually sits down to brush his teeth because "the pain might be too much" when he stands. [AR at 44.] He spends hours at a time lying down on the floor because it "helps [him] a little bit." [AR at 45.] He testified that his medication helps control his pain, but the medication "doesn't last," and "[w]hen it wears out it's over." [AR at 50.]

In light of the fact that plaintiff testified that he could sit, stand, and walk for a limited period,

---

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

especially if his medication was still working, the Court does not find this to be a convincing reason, supported by substantial evidence, to discount plaintiff's subjective statements.

### 4. Activities of Daily Living

The ALJ discounted plaintiff's credibility based on plaintiff's activities of daily living. [AR at 20.] The ALJ noted that plaintiff testified that he spends most of his day lying down due to the pain, but he reported to the psychiatric consultative examiner that he does errands, cooks, cleans, shops, and performs household chores. [AR at 20 (citing AR at 322).] However, the record shows that plaintiff told the consultative examiner that he only did these things "when not in pain." [AR at 322.] He also told the examiner that he dresses and bathes himself, uses a bus for transportation, has no problems interacting with family and friends, manages his own money, and spends his days going for walks, performing personal grooming, cooking, eating, and watching television. [Id.] The ALJ found these activities to be "inconsistent with the presence of an incapacitating or debilitating medical condition." [AR at 20.]

An ALJ may discredit testimony when plaintiff reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting [plaintiff]'s testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)).

Here, the ALJ identified the daily activities that he found conflicted with plaintiff's testimony that he spends most of his days lying down due to pain. [AR at 20.] However, the amount of involvement plaintiff described in these activities was minimal [see, e.g., AR at 226-28 (stating that he could only stand for "some minutes" to wash his plate or vacuum the floor, and that he walked with a walking stick or with his brother); see also AR at 47-48], and the ALJ does not explain how this level of activity describes a person capable of engaging in even basic work activity or how it is inconsistent with plaintiff's subjective symptom testimony. [AR at 20.] To the extent that the ALJ relies upon plaintiff's walks, exercise was prescribed as part of plaintiff's treatment plan [AR

at 373], and the Commissioner's regulations require a claimant to follow his prescribed treatment plan, if the treatment can restore the claimant's ability to work. 20 C.F.R. § 404.1530; see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability").

Accordingly, this was not a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's credibility.

### 5. Objective Medical Evidence

While a lack of objective medical evidence supporting a plaintiff's subjective complaints is one factor that an ALJ can consider in evaluating symptom testimony, it cannot provide the only basis to reject a claimant's credibility. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Because this reason by itself cannot be the sole legally sufficient reason for discounting plaintiff's credibility, and because, as discussed above, the Court finds that the other reasons for discounting plaintiff's subjective complaints were not clear and convincing and supported by substantial evidence, the ALJ on remand may also need to redetermine the extent to which the objective medical evidence supports plaintiff's allegations.

### 6. Conclusion

In sum, the Court finds that it was error to discount plaintiff's credibility based on plaintiff's allegedly inconsistent statements regarding his reason for leaving work and his cardiac condition, receipt of unemployment benefits, observations of a claims representative, and activities of daily living. Even assuming the ALJ erroneously relied on these reasons, the ALJ's credibility determination must still be upheld if he also provided valid reasons supported by the record that constitute substantial evidence. Molina, 674 F.3d at 1115. In this case, as discussed above, the

only other reason relied on by the ALJ was lack of supporting objective evidence, which, even if supported by substantial evidence, cannot provide the sole basis to reject plaintiff's credibility. Therefore, the ALJ erred in discrediting plaintiff's credibility and remand is warranted.

**B.    MEDICAL OPINIONS**

    **1.    Legal Standard**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine, 574 F.3d at 692; see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner, 613 F.3d at 1222. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim, 763 F.3d at 1160-61; Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

/

/

### 2. Dr. Oganyan

On October 28, 2010, Dr. Oganyan, plaintiff's treating physician, completed a Doctor's Certificate as part of plaintiff's claim for disability insurance benefits through the California Employment Development Department. [AR at 439.] On the form, Dr. Oganyan indicated that plaintiff had been under his care from September 2, 2010, to October 28, 2010, and was seen on a monthly basis. [Id.] Dr. Oganyan indicated that plaintiff had been incapable of performing his regular or customary work since September 2, 2010, and Dr. Oganyan anticipated releasing plaintiff to his regular or customary work on March 2, 2011. [Id.] Dr. Oganyan indicated findings of lumbar disc degeneration with desiccation, lower back pain radiating to the bilateral lower extremities, numbness in the buttocks, and unstable gait. [Id.]

On December 1, 2012, Dr. Oganyan completed an employability screening on a County of Los Angeles Department of Public Social Services form and opined that plaintiff was temporarily disabled from December 1, 2012, to May 1, 2013, and was "potentially SSI eligible." [AR at 499.] The screening indicated that plaintiff had lumbar spine degenerative disc disease, hypertension, coronary artery disease, weakness, fatigue, neuropathy, and unstable gait. [Id.]

The ALJ stated that Dr. Oganyan's opinions were "not entitled to great weight" for the following reasons:

> When doctors indicate a person is temporarily disabled, it is usually so that the claimant can perform physical therapy, convalesce following surgery, or to give the injury a chance to heal. Many times, the person is no better than when first seen by the physician. Moreover, even when the expressions of temporarily [sic] disability are considered, they are virtually useless because the evaluating physician does not generally state what the claimant can do despite his impairment. And, as in this case, the claimant was only "temporarily disabled" from his job as a security guard; he was not disabled from all jobs. Finally, there is no evidence the claimant has coronary artery disease as indicated by the provider.

[AR at 19-20.] Instead, the ALJ found that the assessment of the State Agency review physician, who found that plaintiff could perform a range of light work with postural limitations, was generally consistent with the RFC.[7] [AR at 20, 291.]

---

[7] The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. Lester, 81 F.3d at 830-31. The ALJ noted
(continued...)

Although the ultimate legal conclusion as to whether a claimant is disabled under the Social Security Act is an issue reserved to the Commissioner, the ALJ is still required to consider, and give legally sufficient reasons for rejecting, a treating physician's subjective judgments about a claimant's ability to work. See Reddick, 157 F.3d at 725 (explaining that a physician may render "medical, clinical opinions" or opinions on the ultimate issue of disability, and that the reasons required to reject a treating doctor's opinion as to disability are comparable to those required for rejecting a medical opinion); Lester, 81 F.3d at 832-33 ("The Commissioner is required to give weight not only to the treating physician's clinical findings and interpretation of test results, but also to his subjective judgments . . . . The treating physician's continuing relationship with the claimant makes him especially qualified to . . . form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.").

Here, in the October 2010 form, Dr. Oganyan opined as to plaintiff's ability to perform his regular or customary work, not all work. [AR at 439.] Although Dr. Oganyan did not specify in the December 2012 form whether plaintiff was temporarily disabled from his regular or customary work or all work, plaintiff contends that Dr. Oganyan's opinion concerned plaintiff's inability to perform his past relevant work. [JS at 14, 17; AR at 499.] Moreover, as the ALJ noted, Dr. Oganyan opined in both forms that plaintiff's disability was temporary. [AR at 20, 439 (temporary disability expected to last seven months -- from September 2010 to March 2011), 499 (temporary disability expected to last six months -- from December 2012 to May 2013).] Thus, neither period of temporary disability lasted for a continuous period of twelve months, and there is no report from Dr. Oganyan for the period in between. In addition, as the ALJ noted [AR at 20], Dr. Oganyan did not provide an opinion regarding plaintiff's functional capacity or limitations. [AR at 439, 499.] Thus, substantial evidence supports the ALJ's finding.

/

/

---

[7](...continued)
a lack of significant medical conditions and functional limitations in plaintiff's treatment records supported the RFC. [AR at 17-19.]

The ALJ also noted the lack of evidence that plaintiff has coronary artery disease.[8] [AR at 20.] Dr. Oganyan was affiliated with All for Health Community Clinic. [See, e.g., AR at 439, 499.] The record contains treatment records from All for Health Community Clinic from September 2010 through February 2013. [AR at 301-15, 338-50, 371-499.] Coronary artery disease is identified in the treatment records as a co-morbid condition to hypertension and a risk factor for hypertension. [See, e.g., AR at 301, 305, 308, 404, 408.] Morbidity and mortality from coronary artery disease was discussed with plaintiff. [AR at 339.] Thus, while the record reflects that coronary artery disease was identified and discussed with plaintiff, there is no evidence in the record showing that plaintiff actually has coronary artery disease or that he changed his lifestyle because of it. [AR at 339.] Therefore, substantial evidence supports the ALJ's finding that the record lacks evidence that plaintiff has coronary artery disease.

As discussed above, the ALJ provided specific and legitimate reasons supported by substantial evidence for not giving great weight to Dr. Oganyan's opinions.[9] Even if the ALJ erred in discounting Dr. Oganyan's opinions about plaintiff's ability to perform his past relevant work, the error is harmless because the ALJ made the alternative finding that there are other jobs existing in the national economy that plaintiff could perform. [AR at 21.]

## C. RESIDUAL FUNCTIONAL CAPACITY

Plaintiff contends that the ALJ erred in the RFC assessment by "ma[king] his RFC assessment in the absence of an examining physician opinion," and "not tak[ing] into account [plaintiff]'s frequent urination resulting from taking a diuretic water pill that would require unscheduled restroom breaks." [JS at 18 (citation omitted).]

---

[8] The ALJ appears to treat Dr. Oganyan's diagnosis of "coronary artery disease," as distinguishable from plaintiff's alleged "cardiac condition," considered supra, part V.A.1, which relates to plaintiff's complaints of heart palpitations and chest pain.

[9] Because the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to discount Dr. Oganyan's opinion, the Court need not discuss plaintiff's contention that the ALJ had a duty to recontact Dr. Oganyan to determine whether Dr. Oganyan believed there was medical improvement. [JS at 14.]

1  The ALJ "has broad latitude in ordering a consultative examination" where available medical evidence is insufficient to determine the severity of the claimant's impairment. Reed v. Massanari, 270 F.3d 838, 842-43 (9th Cir. 2001) (citation and internal quotation marks omitted); accord Kish v. Colvin, 552 Fed. App'x 650, 651 (9th Cir. 2014). Here, the record was neither ambiguous nor inadequate to permit a full and proper evaluation of plaintiff's alleged impairments. However, because the case is being remanded for reconsideration of plaintiff's credibility, which may affect the ALJ's findings regarding the functional limitations resulting from plaintiff's impairments, on remand the ALJ shall also reconsider plaintiff's RFC.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Second, if warranted, the ALJ shall reassess plaintiff's RFC and proceed through step four and, if warranted, step five, to

determine, with the assistance of a VE if necessary, whether plaintiff is capable of performing his past relevant work or any other work existing in significant numbers in the regional and national economy.

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: June 10, 2015

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE